## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **U.S. BANK TRUST, N.A., AS TRUSTEE FOR LSF11 MASTER PARTICIPATION TRUST**<br><br>v.<br><br>**LENDIA, INC., a Massachusetts Corporation** | Docket No.:<br><br>**VERIFIED COMPLAINT FOR:**<br>  1. **DECLARATORY RELIEF; AND**<br>  2. **APPOINTMENT OF A RECEIVER** |

NOW COMES Plaintiff, U.S. Bank Trust, N.A., as Trustee for LSF11 Master Participation Trust ("U.S. Bank" or "Plaintiff") files this Declaratory Complaint to confirm its ownership of a mortgage in the original principal amount of two hundred forty five thousand dollars ($245,000.00) on the property located at 253 Northwest River Road, Sebago, Maine 04029 (the "Property") given to Mortgage Electronic Registration Systems Inc. ("MERS") as nominee for Lendia, Inc. ("Lendia"), which was dated November 18, 2005, and recorded in the Cumberland County Registry of Deeds on December 7, 2005, Book 23468, Page 271 (the "Charette Mortgage") and to appoint a Receiver for Lendia a former Massachusetts Corporation, to assign the Charette Mortgage and other mortgages upon presentation of documentation of ownership, and in support of its Complaint alleges as follows:

### I.    JURISDICTION AND VENUE

**1.** This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) (Diversity) because the Plaintiff and the Defendants are citizens of different states and the matter in

controversy exceeds the sum or value of seventy-five thousand and 00/100 ($75,000.00) dollars, exclusive of interest and costs. Any Court of the United States, upon filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether further relief is or could be sought under 28 U.S.C. § 2201.

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because the object of this litigation is a Mortgage given as security for a certain Note held by U.S. Bank Trust, N.A., as Trustee for LSF11 Master Participation Trust, executed in the amount of Two Hundred Forty-Five Thousand and 00/100 ($245,000.00) Dollars; thus, the amount in controversy exceeds the jurisdictional threshold of seventy-five thousand ($75,000.00) dollars.

3. Venue is properly exercised pursuant to 28 U.S.C. § 1391(b)(2) insofar as all or a substantial portion of the events that give rise to the Plaintiff's claims that a Receiver be appointed to act for Lendia, a former Massachusetts Corporation, transpired in Massachusetts venue is proper in Massachusetts notwithstanding the fact that the mortgaged premises is in Maine.

## II.    PARTIES

4. Plaintiff is a National Association, operating and existing under the laws of the United States with an address located at 300 East Delaware Avenue, 8th Floor, Wilmington, Delaware, 19809.

5. Upon information and belief, Lendia was incorporated in the Commonwealth of Massachusetts on January 1, 2002, pursuant to Articles of Organization filed with the Massachusetts Secretary of the Commonwealth.

6. Upon information and belief, Lendia was dissolved on or about June 18, 2012, by Court Order or by the Secretary of Commonwealth according to the records of the Secretary of the Commonwealth.

7. Upon information and belief, prior to its dissolution, Lendia was a residential mortgage lender with its principal place of business in Worcester, Massachusetts and had a registered agent located in Hampden, Massachusetts.

## III.    FACTS

8. On November 18, 2005, Paul L. Charette and Pamela J. Charette executed and delivered to Lendia a certain Note (the "Charette Note") in the amount of $245,000.00.[1]

9. Plaintiff is the holder and owner THE NOTE ATTACHED IS ENDORSED TO SUNTRUST MORTGAGE, INC ARE WE MISSING ENDORSEMENT? pursuant to blank endorsement and delivery of the Charette Note and is in possession of the same.

10. As security for the debt evidenced by the Charette Note, Paul L. Charette and Pamela J. Charette gave the Charette Mortgage on the property located at 253 Northwest River Road, Sebago, Maine 04029 to MERS as nominee for Lendia, which was dated November 18, 2005, and recorded in the Cumberland County Registry of Deeds on December 7, 2005, Book 23468, Page 271.[2]

11. On or around October 7, 2011, MERS executed an Assignment of the Charette Mortgage to Suntrust Mortgage, Inc. ("Suntrust"), which was recorded in the Cumberland County Registry of Deeds on October 13, 2011, Book 29032, Page 340.[3]

12. On or around December 2, 2016, Suntrust executed an Assignment of the Charette

---

[1] A true and correct copy of the Note is attached hereto as Exhibit A.
[2] A true and correct copy of the Mortgage as recorded is attached hereto as Exhibit B.
[3] A true and correct copy of the Assignment as recorded is attached hereto as Exhibit C.

Mortgage to Federal National Mortgage Association ("Fannie Mae"), which was recorded in the Cumberland County Registry of Deeds on December 6, 2016, Book 33667, Page 14.[4]

13. On or around February 19, 2019, Fannie Mae executed an Assignment of the Charette Mortgage to U.S. Bank, which was recorded in the Cumberland County Registry of Deeds on February 19, 2019, Book 35468, Page 270. [5]

14. The Charette Mortgage Loan was acknowledged and modified by virtue of a Loan Modification Agreement between Pamela Charette and SunTrust Mortgage Inc., dated July 15, 2015 and recorded in the Cumberland County Registry of Deeds on August 17, 2015, Book 32517, Page 176, ("Charette 2015 Modification").[6]

15. The Charette Modification changed the interest rate on the loan from adjustable to a 4% fixed rate, brought the loan up to date and adjusted the monthly payment as set forth therein.[7]

16. The Charette Mortgage has been in default since May 1, 2020.

17. Notwithstanding the fact that Plaintiff is the current owner and holder of the Charette Note secured by the Charette Mortgage, Plaintiff is unable to foreclose the Mortgage Loan under Maine law.[8]

18. In 2014, the Maine Law Court determined that an Assignment of Mortgage from MERS conveys only the right to record the Mortgage and cannot transfer ownership of the mortgage or convey the right to foreclose.[9]

---

[4] A true and correct copy of the Assignment as recorded is attached hereto as Exhibit D.
[5] A true and correct copy of the Assignment as recorded is attached hereto as Exhibit E.
[6] A true and correct copy of the loan modification as recorded is attached hereto as Exhibit F.
[7] *Id.*
[8] *See Bank of Am., N.A. v. Greenleaf*, 2014 ME 89, ¶¶ 13-17, 96 A.3d 700 (2014)("*Greenleaf I*")(holding that an Assignment of Mortgage from MERS only transfers the right to record the Mortgage, not the right to foreclose).
[9] *See id.*

19. Accordingly, in Maine, an Assignment of Mortgage from MERS alone is ineffective to establish a mortgagee's standing to foreclose.[10]

20. To establish its standing to foreclose a Mortgage in Maine, the mortgagee must produce an Assignment of Mortgage from the originating lender, here, Lendia.[11]

21. Thus, under Maine case law, the chain of Assignments of the Mortgage beginning with the Assignment from MERS and ending with the Assignment to the Plaintiff is ineffective to establish the Plaintiff's standing to foreclose the Mortgage.[12]

22. Upon information and belief, although Lendia was previously qualified to do business in Maine, the State of Maine revoked Lendia's authority to transact business on February 20, 2007.[13]

23. Lendia is, for all intents and purposes, defunct since it has been dissolved, its operations have ceased, and it has been a suspended corporation for more than 10 years.[14]

24. Upon information and belief, Lendia exists, if at all, for the purpose of winding up its affairs only.

25. As a result, in the absence of a Court Order appointing a Receiver to execute a Quitclaim Assignment of Mortgage on behalf of Lendia, the Plaintiff cannot obtain a Quitclaim assignment executed by a person with authority and thereafter foreclose pursuant to the terms of the Mortgage and related modification.

26. As set forth in the attached documentation, the Plaintiff is the holder and owner of the original Charette Note evidencing the Mortgage Loan, and thus seeks the appointment of

---

[10] *See id.*
[11] *See id.*
[12] *See id.*
[13] The Secretary of State Business search for the State of Maine is attached hereto as Exhibit G.
[14] The Secretary of Commonwealth business search for the Commonwealth of Massachusetts is attached hereto as Exhibit H.

a Receiver to execute an Assignment of the Mortgage on behalf of Lendia so that the Plaintiff may establish its valid interest in the Mortgage for the purpose of foreclosing same.

27. Further, the Plaintiff seeks the appointment of a Receiver to execute Assignments of Mortgage on behalf of Lendia with respect to any additional mortgage loans originated by Lendia and secured by real estate located in Maine as the need arises following presentation of sworn documentation confirming ownership of the mortgage at issue originated by Lendia.

28. As such, Plaintiff seeks the appointment of a Receiver for the purposes of winding up Lendia's affairs, including but not limited to executing an Assignment of the Charette Mortgage directly to Plaintiff, and to execute other assignments of other mortgages as the need arises.

29. A proposed QCAOM is attached as Exhibit I to this complaint and such assignments are valid and necessary in Maine to transfer the mortgage with *Greenleaf* issues.

## IV.    LEGAL AUTHORITY FOR APPOINTMENT OF A RECEIVER

30. In July of 2014, the Maine Law Court issued its decision in *Greenleaf I*, holding that, in Maine, an Assignment of Mortgage from MERS conveys only the right to record the mortgage and, to establish standing to foreclosure, the noteholder must produce an assignment of mortgage directly from the originating lender.[15]

31. In 2015, the Maine Law Court issued its decision in *Greenleaf II*, which confirmed that the "MERS issue" is an issue that concerns a mortgagee's standing to foreclose and that a chain of Assignments of Mortgage beginning with MERS is ineffective to confer standing to

---

[15] *See Greenleaf I*, 2014 ME 89, ¶¶ 13-17, 96 A.3d 700.

foreclose, which, in effect, for purpose of foreclosure, invalidated thousands of MERS Assignments thereby forcing lenders to obtain Assignments from the loan originators if available, and if not, to file declaratory actions to establish standing and appoint receivers to execute assignments of mortgages.[16]

32. The practice of filing declaratory actions in Maine as a path to establishing a mortgagee's standing to foreclose was extinguished in late 2019 by the decision in *Beal Bank*, wherein the Maine Law Court held that ownership of the note does not equate to actual record ownership of the accompanying mortgage and, accordingly, is insufficient to establish standing to foreclose under Maine law.[17]

33. Thus, under Maine law, the actual ownership of the Note and Mortgage accompanied by an Assignment of Mortgage from MERS are insufficient for the Plaintiff to enforce its rights under the Mortgage upon the mortgagors' default.[18]

34. Rather, the Plaintiff must obtain an Assignment of Mortgage directly from the originating lender, in the case of the Charette Mortgage, Lendia.[19]

35. By statute, a MERS assignment is valid to assign, discharge, modify, transfer, or accept a Deed-in-Lieu of Foreclosure, however, absent a Quitclaim Assignment of Mortgage, the Plaintiff is unable to foreclose the mortgage.[20]

36. Plaintiff is unable to obtain an equitable Assignment of the Mortgage through the Maine courts due to the rulings in *Beal Bank*, *Greenleaf I* and *Greenleaf II*.

37. As a result of Lendia's dissolution, the Plaintiff cannot obtain an Assignment of the

---

[16] *See Bank of Am., N.A. v. Greenleaf*, 2015 ME 127, ¶ 4, 124 A.3d 1122 (2015)("*Greenleaf II*").
[17] *See Beal Bank USA v. New Century Mortgage Corp.*, 2019 ME 150, ¶ 15, 217 A.3d 731 (2019).
[18] *See id.*; *Greenleaf I*, 2014 ME 89, ¶¶ 13-17, 96 A.3d 700; *Greenleaf II*, 2015 ME 127, ¶ 4, 124 A.3d 1122.
[19] *See Greenleaf I*, 2014 ME 89, ¶¶ 13-17, 96 A.3d 700.
[20] *See* Title 33 M.R.S. § 508.

Mortgage from Lendia through any other means other than a judicial proceeding appointing a Receiver to execute the same.

38. Courts in other jurisdictions have appointed receivers in similar circumstances.[21]

39. Plaintiff alleges that Court intervention is required in order to appoint a Receiver to execute a Quitclaim Assignment of Mortgage to the Plaintiff, in recordable form, and to execute Assignments of Mortgage for any other mortgage loans that Lendia may have originated in Maine.

## COUNT I:

### DECLARATORY RELIEF

40. Plaintiff repeats and incorporates the above paragraphs 1 through 38 inclusive, as though fully set forth herein.

41. Plaintiff is informed and believes and based thereon alleges that it was the intention of Lendia to assign the Note, the Mortgage, and all rights, claims, causes of action, and other matters arising thereunder to its successors and ultimately to Plaintiff.

42. As the holder, owner and beneficiary under the Note, Plaintiff is entitled to service the Loan, and should be entitled to enforce the terms of the Mortgage, including initiating foreclosure proceedings.

43. Per the court decisions in *Beal Bank*, *Greenleaf I* and *Greenleaf II*, Plaintiff is unable to enforce the terms of the Mortgage through foreclose because an assignment of the Mortgage from MERS is not equivalent to the ownership of the Mortgage under Maine law.

---

[21] *See, e.g. In Re Mortgage Lenders Network USA, Inc.*, 2021 WL 426240 (Del. Ch. Apr. 5, 2021) (Order appointing receiver for the purpose of executing documents including Quitclaim assignments on the lender's behalf); *In Re Aegis Mortgage Corp.*, C.A. No. 2019-0009-KSJM (Del.Ch. 2019) (Order appointing receiver for the purpose of executing documents including Quitclaim assignments on the lender's behalf); *In Re First Magnus Financial Corp.* (Az. 2021) (Appointing a Receiver for the dissolved original mortgage lender); *In re Mader's Store for Men, Inc.*, 254 N.W.2d 171 (Wisc. 1977) (Appointment of Receiver to protect from loss of assets).

44. Plaintiff has no other remedy but to seek an Assignment directly from Lendia, a dissolved Massachusetts corporation, whose operations have ceased.

45. An actual controversy has arisen and now exists between Plaintiff and Defendant concerning their respective rights in that Plaintiff needs the Assignment from Lendia, a dissolved Massachusetts corporation, and said Defendant is unable or unwilling to execute one given its dissolved corporate status.

46. Therefore, in order for Plaintiff to preserve its property rights, Plaintiff requests the Court declare it the owner and holder of the Charette Mortgage, appoint a Receiver to continue to wind up Defendant's affairs and to dispose of or convey its property, in particular, the subject Mortgage but also other mortgage loans that Lendia may have originated in the State of Maine, but for which it did not directly assign the Mortgage to Plaintiff, which at this point are unknown but that Plaintiff believes exist.

47. Unless the Court declares it the owner and holder of the Charette Mortgage and appoints a Receiver who can assign the Mortgage to Plaintiff, Plaintiff will suffer irreparable injury to the extent the terms of the Mortgage cannot be enforced by Plaintiff, who gave valuable consideration for the transfer of the original Note and Mortgage to it.

48. A judicial declaration is therefore necessary and appropriate at this time under the circumstances, and Plaintiff asks that the Court enter an Order declaring it the owner and holder of the Charette Mortgage.

## COUNT II:

## APPOINTMENT OF RECEIVER

49. Plaintiff repeats and incorporates above paragraphs 1-47 as though fully set forth herein.

50. In Massachusetts, a Receiver may be appointed for a dissolved or otherwise terminated entity, to "take charge of the estate […] and to do all other acts which might be done by such corporation, if in being, which may be necessary for the final settlement of its

unfinished business."[22]

51. Based on the foregoing allegations, to preserve its property rights, the Plaintiff requests that the Court appoint a Receiver to continue to wind up Lendia's affairs and, in particular, to assign the subject Charette Mortgage to Plaintiff, but also to assign other mortgage loans that Lendia may have originated in Maine, but for which it did not directly assign the mortgage loans to its successor in interest.

52. Under Maine law and pursuant to *Greenleaf I* and *Greenleaf II*, for the purposes of foreclosure, the Charette Mortgage is an undistributed asset of Lendia.

53. Unless a Receiver is appointed, the Plaintiff will suffer irreparable injury as it gave valuable consideration for the transfer of the original Charette Note and Mortgage but will be unable to enforce the terms of the Mortgage in the absence of an Assignment of Mortgage from Lendia.

54. Accordingly, Plaintiff requests that the Court appoint a Receiver to execute an Assignment of the Charette Mortgage to the Plaintiff, to execute future Assignments of Mortgage with respect to any other mortgage loans originated by Lendia and secured by real property located in Maine, to otherwise wind-up Lendia's affairs, and to discharge further obligations.

55. Plaintiff requests this Court appoint Jeffrey B. Loeb Esq. of Rich May, P.C. as Receiver for Lendia, to execute a Quitclaim Assignment of the Charette Mortgage and retain the power to assign other MERS/Lendia mortgages as is necessary.

WHEREFORE Plaintiff respectfully requests this Court enter an Order finding that Plaintiff is the owner and holder of the Charette Mortgage and appointing Jeffrey Loeb, Esq. as

---

[22] *See* G.L. c. 155, § 52.

Receiver to execute an Assignment of the Mortgage to the Plaintiff on behalf of Lendia, and to execute any further Assignments of Mortgages originated by Lendia and secured by real property located in Maine, and for such other and further relief as this Court may deem just and proper.

Respectfully Submitted, U.S. Bank Trust, N.A., as Trustee for LSF11 Master Participation Trust,

By its attorneys,

DATED: December 23, 2022

/s/ Reneau J. Longoria, Esq.
Reneau J. Longoria, Esq.
Doonan, Graves, and Longoria, LLC
100 Cummings Center, Suite 303C
Beverly, Massachusetts, 01915
(978)921-2670
RJL@dgandl.com

## VERIFICATION

I am employed as a Litigation Representative with Fay Servicing, LLC., the authorized loan servicer and attorney-in-fact for the Plaintiff in this action, U.S. BANK TRUST, N.A., AS TRUSTEE FOR LSF11 MASTER PARTICIPATION TRUST, and am authorized to make this verification for and on its behalf, and I make this verification for that reason. I have read the foregoing **VERIFIED COMPLAINT FOR: 1. DECLARATORY RELIEF; 2. FOR APPOINTMENT OF A RECEIVER** and I know its contents to be true, based upon the business records of Fay Servicing, LLC and/or my personal knowledge except those matters that are alleged on information and belief, and as to those matters, I am informed and believe them to be true.

I declare under penalty of perjury under the laws of the State of _Florida_ that the foregoing is true and correct. Executed on December _15th_, 2022, in _SARASOTA, Florida_.

U.S. BANK TRUST, N.A., AS
TRUSTEE FOR LSF11 MASTER
PARTICIPATION TRUST, **BY FAY
SERVICING, LLC. ITS SERVICER
AND ATTORNEY-IN-FACT,**

Dated: December _15th_, 2022

By: _Michael J. Paterno_
Name: _Michael J. Paterno_
Title: _Litigation Representative_